FRIEDMAN KAPLAN SEILER & ADELMAN LLP
William P. Weintraub, Esq.
Jordan I. Brackett, Esq.
1633 Broadway, 46th Floor
New York, New York  10019-6708
Telephone:     (212) 833-1100
Facsimile:      (212) 833-1250

Attorneys For GALLERIA ACQUISITION INC.


UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BALLY TOTAL FITNESS OF GREATER NEW YORK, INC. *et al.*, | ) Case No. 08-14818 (BRL) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |
| | ) Hearing Date: January 7, 2009 |
| | ) Hearing Time: 10:00 A.M. |
| | ) Relates to Docket Nos: 147 and 148 |


### GALLERIA ACQUISITION'S COMBINED OBJECTION TO DEBTORS' MOTIONS TO DEFER PAYMENT OF DECEMBER STUB RENT AND TO DEFER PAYMENT OF JANUARY 2009 RENT

Galleria Acquisition, Inc. ("Galleria") submits the following Combined Objection

to the (a) Motion Of Debtors For Entry Of An Order Extending the Debtors' Time For

Performance Of Obligations Under Unexpired Leases Of Nonresidential Real Property (the

"January Rent Motion") (Docket No.147) and (b) Motion Of The Debtors Pursuant to Section

105(a) Of The Bankruptcy Code For An Order Establishing Procedures For Resolving The

Applicability Of Section 365(d)(3) Of The Bankruptcy Code To The Demands of Certain

Landlords For Immediate Payment Of December Rent (the "December Stub Rent Motion")

(Docket No. 148).  Further, pursuant to Section 365(d)(3) of the Bankruptcy Code, Galleria

requests that the Court enter an order directing Debtors to pay immediately both December stub rent and January rent.

## I.    <u>BACKGROUND</u>

1.    Galleria, as successor in interest to Galleria Towers, Inc., is the landlord and Debtor Bally Fitness of Colorado, Inc., fka Holiday Health Clubs and Fitness Centers, Inc., ("Debtor") is the tenant under a lease for a portion of the property located at 720 South Colorado Boulevard in Denver, Colorado (the "Lease").  Under the Lease, Debtor owes fixed monthly rent of $43,202.50, monthly operating expenses of $5,536.15, and a parking fee of $2,500, for a total monthly rent of $51,238.65.  Prior to its bankruptcy filing, Debtor had not paid November rent or the rent due on December 1, 2008.

2.    Debtor has not paid the prorated portion of the fixed rent for December 2008 (the "Stub Rent"), which is $49,585.77.

3.    In the December Stub Rent Motion, Debtors request that the Court establish procedures to determine whether they must pay December Stub Rent immediately in accordance with Section 365(d)(3) of the Bankruptcy Code.  In reality, the December Stub Rent Motion is an attempt by Debtors to impose procedures that would improperly defer payment of December Stub Rent, even beyond the maximum 60 days contemplated by Section 365(d)(3) of the Bankruptcy Code.

4.    In the January Rent Motion, Debtors request that the Court defer Debtor's obligations to pay January rent until early February 2009.

5.    As demonstrated in this Combined Objection, both of Debtors' Motions should be denied.  Debtors should be required to pay immediately December Stub Rent and January rent, as required by the plain language of Section 365(d)(3) of the Bankruptcy Code.

II.       **DEBTORS HAVE NOT ESTABLISHED CAUSE FOR DEFERRING THE TIMELY PAYMENT OF JANUARY RENT**

6.       Section 365(d)(3) obligates Debtors to "timely perform all the obligations … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).  Debtors do not and cannot dispute that the obligations contemplated by Section 365(d)(3) include the timely payment of monthly rent.

7.       Debtors, however, argue that the Court should provide an extension of time for them to pay January rent until 60 days after the Petition Date.  As it relates to the extension requested by Debtors, Section 365(d)(3) provides:  "The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period."

8.       The issue for this Court to resolve then is simple:  have Debtors satisfied their burden of proof to demonstrate cause to extend the otherwise clear mandate of Section 365(d)(3).  The answer is clear:  they have not.

9.       There is no dispute that Congress enacted Section 365(d)(3) to protect landlords.  *See, e.g., In re R.H. Macy & Co, Inc.,* 170 B.R. 69, 76 (Bankr. S.D.N.Y. 1994)("365(d)(3) was added to the Code, as the remarks of Senator Hatch indicate, to 'requir[e] the trustee to perform all the obligations of the debtors under a lease of nonresidential real property at the time required in the lease.  This timely performance requirement will insure that the debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.' … In this fashion, § 365(d)(3) dramatically altered the treatment of a lessor of nonresidential real property's post-petition claim and thus effected a 'major change' from pre-Code and prior Code practice." (citations omitted)).

695031.1                                              3

10.     Significantly, none of the cases cited by Debtors in the January Rent Motion grant a debtor tenant an extension of time to timely pay rent. For example, the *DWE Screw Products* case, heavily relied upon by Debtors, discusses whether a debtor should receive an extension of time to assume or reject a lease. *In re DWE Screw Prods., Inc.* 157 B.R. 326, 329 (Bankr. N.D. Ohio 1993).

11.     Further, Debtors attempt to establish "cause" out of whole cloth. For example, they state that the extension will allow Debtors to continue to operate and will provide them with "adequate liquidity during the early stages of this case." *See* January Rent Motion, ¶ 16. This argument creates an imaginary crisis. According to each of the budgets Debtors have submitted to the Court to date, Debtors have more than sufficient cash flow to pay January rent in a timely fashion. For example, the budget attached to the Third Interim Cash Collateral Order indicates that Debtors will pay January rent and still have an ending cash balance in excess of $16,000,000.00 for the week of January 2, 2009. (A copy of the Budget annexed to the Third Interim Cash Collateral Order is attached to this Combined Objection as Exhibit 1.)

12.     Debtors also argue that they need a "grace period" in order to "understand the obligations arising under the leases and secure the necessary funding to satisfy those obligations." *See* January Rent Motion ¶ 25. This argument is completely inapplicable in these cases. Debtors know the rent they have to pay and, according to the budgets they have submitted to this Court, they have the funds to pay those obligations.

13.     Debtors have already failed or refused to pay rent for November and December. Debtors provide no credible basis for putting Galleria at any greater risk. Galleria and the other landlords should not be forced to provide financing to these Debtors on nothing more than unsubstantiated projections, boiler plate assertions and wishful thinking. If Debtors

have the cash, the rent payments should be made; and, if Debtors do not have the cash necessary to pay January rent, they have a fiduciary obligation to inform the Bankruptcy Court that there is a risk of administrative insolvency.  The desire to horde cash at the expense of one group of post-petition creditors is not "cause."

14.    Accordingly, the January Rent Motion should be denied.  Debtors should be required to timely pay January rent.

### III.    DEBTORS SHOULD BE REQUIRED TO PAY DECEMBER STUB RENT IMMEDIATELY

15.    This Court should follow Bankruptcy Judge Gropper's decision in the *Stone Barn Manhattan*  bankruptcy case and require Debtors to pay stub rent using the proration calculation for the thirty days in December these Debtors were in fact in bankruptcy as debtors in possession.  As Judge Gropper points out, this result is both consistent with the plain meaning of Section 365(d)(3) and promotes congressional intent in enacting Section 365(d)(3).  *See In re Stone Barn Manhattan LLC,* No. 08-12579, 2008 WL 5265739 (Bankr. S.D.N.Y. Dec. 17, 2008).

16.    Debtors argue that this Court has previously rejected proration for first month's rent in *In re R.H. Macy, Inc.*, 152 B.R. 869 (Bankr. S.D.N.Y. 1993).  In fact, that decision is inapposite because it deals with the payment of taxes that first became due under a lease post-petition.  In other words, under the peculiar facts of that case, all of the taxes - - even reassessed taxes from prior years - - first became due after the filing of the petition.  Consistent with the purpose of Section 365(d)(3), this Court held that all of the taxes had to be paid as post-petition obligations.  The case did not address the opposite situation, where the due date for rent

(as opposed to taxes) occurred *before* the petition date but the debtor/tenant continued to use and occupy the premises after the petition date.[1]

17.    As most courts have recognized, the issue for the Court to decide here, *i.e.,* whether first month's rent should be pro rated for the post-petition period, is different and compels a different result. Indeed, in *Macy's II, In re R.H. Macy, Inc.*, 170 B.R. 69 (Bankr. S.D.N.Y. 1994), this Court stated:

> This Court concluded, **with respect to facts then before it**, that the term "obligation" was clear and unambiguous and encompassed the lease's covenant requiring the debtor to pay the property taxes. In this fashion, *Macy's I* is consonant with those decisions which require **timely payment** of rent, common area maintenance and other charges under an unrejected lease for nonresidential real property.

Id. at 73-74 (emphasis added).

18.    As courts have observed, non-residential lessors occupy a unique position during the post-petition, pre-rejection period, and Section 365(d)(3) of the Bankruptcy Code accounts for their distinctive status. Because landlords are compelled to continue post-petition performance, "the provisions of §§ 365(b)(1) and 365(d)(3) unambiguously grant priority status to this class of involuntary claimant." *In re Pudgee's Development of N.Y., Inc.*, 202 B.R. 832, 836 (Bankr. S.D.N.Y. 1996). By explicitly requiring timely payment of all non-residential lease obligations, Section 365(d)(3) protects landlords from ever increasing losses during the post-petition, pre-rejection period. It also prevents debtors from forcing landlords to bear the financial burden of their ongoing business operations during this period. The Bankruptcy Court in the Southern District of New York has strictly construed Section 365(d)(3) to hold that non-residential lessors are entitled to immediate payment of post-petition, pre-rejection rent at the full

---

[1] In *Macy's I*, this Court relied on *In re Child World Inc.*, 150 B.R. 328 (Bankr. S.D.N.Y 1993). The decision in *Child World* was subsequently reversed - - *In re Child World, Inc.*, 161 B.R. 571 (S.D.N.Y. 1993). In its reversal, the District Court supported the proration approach.

rate enumerated in the lease. *In re Pudgee's*, 202 B.R. at 836. Indeed, several Bankruptcy

Courts and one District Court in the Southern District have held that proration of accruing

obligations such as rents is required under Section 365(d)(3). *In re Child World*, 161 B.R. 571,

573-574 (S.D.N.Y. 1993); *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 65-70 (Bankr. S.D.N.Y.

2004) (Judge Gerber); and *In re Ames Department Store, Inc.*, 150 B.R. 107, 109 (Bankr.

S.D.N.Y. 1993) (Judge Goodman). Bankruptcy Judge Gropper's recent decision in the *Stone

Barn Manhattan* case can be added to the growing list.

19.    The request by Debtors to defer any decision on whether to prorate

December rent, or whether to pay any portion of December rent at all, is based on the bizarre

concern that Debtors' own actions will result in landlords filing motions to compel payment of

rent and that Debtors and the Court will be inundated by such motions. This concern is the

bankruptcy equivalent of setting a fire in a crowded theater and then yelling "fire." Debtors have

created this situation by filing their second chapter 11 case on the heels of their first chapter 11

case - - a step that does not inspire confidence in Debtors' ability to prepare credible projections

- - and by immediately asking landlords who have not been paid for two months to wait another

two months because good things might happen. Debtors do not even propose a procedure, which

leaves open the possibility of pushing a resolution of this important issue beyond the 60 day limit

of Section 365(d)(3). This cavalier approach highlights why Congress amended Section 365 to

protect landlords from involuntarily financing precarious debtors.

20.    For the foregoing reasons, this Court should deny the December Stub Rent

Motion to the extent the proposed procedures would delay the ability of Galleria's and other

landlords to obtain a prompt ruling on Debtors' obligations to pay immediately December Stub

695031.1

7

Rent.  Further, the Court should require Debtors to pay immediately both December Stub Rent

and January rent.[2]

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, the December Stub Rent and the January Rent

Motion should be denied.  Debtors should be required to timely pay January rent and Debtors

also should be required to pay December Stub Rent immediately.

Dated: New York, New York
      December 31, 2009

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

    */s/ William P. Weintraub*
William P. Weintraub
Jordan I. Brackett
1633 Broadway
New York, NY 10019-6708
(212) 833-1100 – Phone
(212) 833-1250 – Facsimile

Attorneys for Galleria Acquisition Inc.

---

[2]  Because there is no basis to defer January rent or to delay or deny payment of December Stub Rent, Galleria intends to seek an order pursuant to Bankruptcy Code section 365(d)(3) compelling the immediate payment of December Stub Rent and January rent.  Galleria intends to have its motion heard at the omnibus hearing set for January 29, 2009.